## BANKS *a.* TAYLOR.

*Supreme Court, First District; General Term, December,* 1859.

EXECUTORS AND ADMINISTRATORS.—ACCOUNTING.—APPEAL FROM
SURROGATE.—GUARDIAN AND WARD.

The surrogate has not jurisdiction to settle the accounts of a guardian upon an
accounting sought by the same party, by a petition in his character of ad-
ministrator.

A petition of appeal from an order of the surrogate assuming to settle the ac-
counts of the guardian upon such a petition, need not specify the items.

Of the duty of executors and administrators in reference to personal property re-
served for the use of the family.

Payment of expenses of the real property on the order of the heir, who is also
one of the next of kin, is a payment to such person as one of the next of kin.

A guardian whose ward succeeds to land subject to a mortgage, may, under 1 Re-
vised Statutes, 749, appropriate the personal property in payment of the
mortgage.

Appeal from a decree made by the surrogate in the final set-
tlement of accounts rendered by the defendants.

The facts are stated in the opinion.

BY THE COURT.*—ROOSEVELT, J.—Several questions were em-
braced in the appeal, but the principal point was, whether
accounts filed by defendants as "guardians" were properly
passed on and allowed by the surrogate; or whether his juris-
diction was confined, under the circumstances of the case, to
the accounts which they submitted in their capacity as adminis-
trators. It appeared that the petition presented to the surrogate
by the defendants was confined to their character as administra-
tors. It made no allusion to any guardianship for the children,
or either of them. It simply stated " that letters of administra-
tion on the estate of David Crocker, deceased, were granted to
your petitioners on the twenty-third day of May, 1838," and

* Present, ROOSEVELT, SUTHERLAND, and INGRAHAM, JJ.

that the petitioners " were desirous of rendering a final account of all their proceedings to the surrogate of the county of New York, by whom your petitioners were appointed," and prayed that a citation might issue " to all persons interested in the estate of the deceased to attend a final settlement of the account of their proceeding." And, the citation so issued at the instance of the petitioners, and served on Mr. Banks, the appellant, required all persons interested in the estate (Mr. Banks being one) to appear before the surrogate, at the time and place specified, " then and there to attend the final settlement of account of the proceedings of Eliza C. Crocker and Thomas C. Taylor as administrators of the goods, chattels, and credits of said deceased."

No amendment was subsequently made enlarging the subject or object of the petition as originally presented, and no averment even of any guardianship, except in the production of the letter of guardianship, to show who were entitled to represent the infant next of kin as such on the taking of the accounts of the administrators. On the contrary, the title of the proceedings, many times repeated, from the original petition to the final decree, was uniformly " In the matter of the final accounting of Eliza C. Crocker, administratrix, and Thomas C. Taylor, administrator, of David Crocker, deceased."

It seems perfectly clear, therefore, that that part of the surrogate's decree, the last clause but one, which attempts to pass upon the accounts between the infants and their guardian, was *coram non judice*, and ought to be stricken out. Although void as a judicial proceeding, its continuance in the decree may lead to future embarrassment. The point raised by it not being a question of the allowance or rejection of any particular items of the account, but a question of jurisdiction, the rule did not require that the items involved should be " specified in the petition of appeal." It was sufficient that the party objecting appealed from every part of the decree, and especially from the " retrospective allowance for the support and maintenance of the family of deceased at the rate of $2500 per annum," as being " wrong in principle and unjust as to amount."

We do not mean to say, however, that a retrospective allowance to a guardian, being the mother, for the support of her ward, may not be made as an approximate estimate of the entire cost,

or that the contract indicated in the decree was unjust. It is enough on this appeal to decide that the question was not legally before the surrogate to be passed upon by him. He had a right to allow the charges as moneys paid by the administrators to the guardian, but not as moneys paid by the guardian for the ward. The guardian was entitled to demand the whole of the infant's share of her father's personal estate, and of course the administrators were entitled to pay it to her. How she applied it was no concern of theirs. She was to respond, not to them, but to her ward and to her ward's surviving husband, for all she received, or with due diligence might have received, in a proper action between him and her, and no one else, for that purpose. When called upon in that character and in that manner by him, she will no doubt be prepared, so far as these items are concerned, to render an account of her guardianship.

As to the furniture left by the intestate, the disallowance of which constitutes another objection to the decree, it belongs one-third to the widow and one-third to each of the two children. The administrators, therefore, discharged themselves of this item by handing over the whole to her, instead of selling it and paying her the proceeds. She took one-third in her own right, and two-thirds as guardian. Whether in twenty years' use it has been substantially used up as alleged, and as is very probable, we need not at present inquire. Nor, under the present circumstances, do we think it worth the inquiry of the appellant; except to show, at the proper time, that a proportionately less allowance was necessary for the support of the children.

As to the real estate, the administrators, as such, were not accountable for its rents, nor liable for its taxes or repairs. Their payments, in that respect, like the others above referred to, can only stand on the footing of payments to the guard:an, to be accounted for by her whenever called upon in that capacity.

The guardian alone had charge of the infant's interest in the real estate. But the payments were made on her order, and, in law, therefore, were made to her. If these views are correct, and we see no reason to doubt their accuracy, the whole personal property, to which Mrs. Banks was entitled as one of the next of kin of her father, has been duly accounted for by the administrators of her father, except the sum of $4659.25 in

money, and a few shares of bank and insurance stocks, which the decree of the surrogate has directed to be paid and transferred to her surviving husband. With these exceptions, Mr. Crocker, as guardian of the late Mrs. Banks, in effect admits she has received the whole personal estate of her deceased daughter, and is accountable for it to her daughter's representatives. This discharges the administrators, and leaves the appellant to seek his remedy, beyond the amount so provided for, against his late wife's mother, should he be dissatisfied with the mode in which, as guardian, she has discharged her trust. Whether the amount claimed by her as an allowance for the proximate actual cost of the education and maintenance of her child, be too large or too small, is a question, as before stated, which we are not now called upon to decide ; and we, therefore, give no opinion upon it, except so far as to say that it should be settled, if possible, by the parties themselves.

Something was said on the argument in relation to a mortgage executed by Mr. Crocker in his lifetime for $10,000. By the statute (1 *Rev. Stat.*, 749) it is provided that the heir in such case shall satisfy the mortgage without resorting to the administrator. If, then, it was the duty of Miss Crocker to satisfy this mortgage, it was the duty of her guardian to do it for her; and the appropriation for that purpose made long before her marriage to Mr. Banks, if made at all, although it diminished to that extent the personal property for the benefit of the real, was binding on her, and, of course, on him. It was an appropriation of the property of the ward to pay an obligation which the law had made the debt of the ward, and which it had declared it her duty to satisfy and discharge out of her own property, without specifying whether real or personal, and which the guardian, therefore, it being most beneficial to the ward, was authorized and bound to discharge out of that which was most convenient, and at the same time most insecure, the moneys in hand.